IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JAMES PATRICK HENRY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-CV-4092-NKL |
| | ) | |
| MYLAN PHARMACEUTICALS, INC., | ) | |
| a wholly owned subsidiary of Mylan | ) | |
| Laboratories, Inc., | ) | |
| and | ) | |
| WALGREEN Co., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Pending before the Court are two Motions to Dismiss filed by Defendant Walgreen Co. ("Walgreen") and one Motion to Strike by Plaintiff James Patrick Henry ("Henry") (Doc. 20). Walgreen's first motion is one to dismiss for failure to bring claims within the statute of limitations (Doc. 11). For the reasons stated below it is denied. The second is a Motion to Dismiss for Failure to State a Claim (Doc 12). For the reasons stated below it is granted as to Defendant Walgreen on Counts II and III and denied as to all other counts. Henry's Motion to Strike is denied as moot.

I.  **Background**

On a motion to dismiss, the Court adopts the alleged facts as true and construes reasonable inferences arising from the Complaint in a light most favorable to the Plaintiff. *Knapp v. Hanson*, 183 F.3d 786, 788 (8th Cir. 1999). A motion to dismiss should be

1

granted only when it appears beyond all doubt that the plaintiff can prove no facts that entitle him to relief. *Id.*

Henry suffered a head injury at age 16. Henry has avoided seizures related to that injury for over ten years while on the prescription drug Dilantin. Dilantin is the branded name for an anti-convulsant medication, whose active ingredient is chemically named Phenytoin Sodium.

On or about March 19, 2003, Henry's physician faxed or called Walgreen to renew Henry's prescription for Dilantin. Pursuant to store policy, a Walgreen pharmacist substituted a lower cost generic form of Dilantin, specifically "Mylan 1560," in place of the brand name drug. Mylan 1560 is manufactured by the Co-Defendant in this case, Mylan Pharmaceuticals, Inc. On or about March 23, 2003, Henry arrived to pick up his prescription. He noticed that the generic substitution had been made. Henry told the pharmacist that he had only taken Dilantin. The pharmacist told Henry that the substitute was safe and just as good as the name brand drug. Henry relied upon the pharmacist's assertions and took the drug home without contacting his physician.

Henry commenced taking Mylan 1560 on or about the next evening and continued doing so until April 16, 2003. On April 15, 2003, Henry suffered what is known as a Grand Mal Tonic Clonic seizure. The next day when Henry informed his physician about both the seizure and his switch to Mylan 1560, the physician immediately wrote a fresh prescription requiring the pharmacy to provide Dilantin.

The evening of April 16, before the Dilantin could take effect, Henry suffered

another seizure. He was taken to the emergency room where the results of tests taken that morning revealed that Henry had a sub-therapeutic level of Phenytoin Sodium in his blood. The test revealed that his level was 3.9, while therapeutic levels are generally acquired at a level of 10 or greater. The emergency room doctor had to supply Henry with a high dose of Dilantin intravenously to bring Henry's levels of Phenytoin Sodium within the range necessary to prevent further seizures.

Henry alleges that Mylan 1560 did not provide the same level of Phenytoin Sodium that Dilantin did and, as a result, he suffered seizures. This fact was known through published papers and studies at the time Walgreen substituted Mylan 1560 and was or should have been known by the Defendant manufacturer and the pharmacist.

Henry brings this action against Mylan Pharmaceuticals, Inc. and Walgreen Co., Inc., on a number of counts, based in negligence, failure to warn, breach of warranty, and misrepresentation. Walgreen has moved to dismiss all counts of the complaint against it for multiple reasons.

## II. Discussion

### A. Walgreen as a "Health Care Provider"

A central question to this lawsuit is whether or not Walgreen, a corporate pharmacy, is a "health care provider" as defined by Mo. Rev. Stat. § 538.205(4) (2000).

The statutory definition of "health care provider" lists pharmacists, but not pharmacies. *Id.* Relying on the doctrine of "*expressio unius est exclusion alterius,*" Henry contends that because pharmacies are not listed as health care providers, the Court

3

must find that pharmacies are not health care providers. The *expressio unius* canon of construction, however, "should be invoked only when other aids to interpretation suggest that the language at issue was meant to be exclusive." *Bailey v. Fed. Intermediate Credit Bank of St. Louis*, 788 F.2d 498, 500 (8th Cir. 1986). It does not appear that the drafters of section 538.205 intended for their list of "health care providers" to be exclusive because they expressly included "any other person or entity that provides health care services under the authority of a license or certificate." Mo. Rev. Stat. § 538.205(4). Thus, the question becomes whether a corporate pharmacy is an entity that provides health care services under the authority of a license or certificate.

Section 428.104(5) defines "health care services" as "any service that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized." Mo. Rev. Stat. § 538.205(5). Professional services include the "transfer to a patient of goods or services incidental or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized." *Id.* In the present action, Walgreen transferred to Henry a prescription in furtherance of its business as a pharmacy and, thus, seems to come within the definition.

Henry contends, however, that as a business entity, Walgreen is not an institutional health care provider. Certainly, the statute employs some degree of circular logic. In section 538.205(4), an entity may clearly be a "health care provider" if it

4

provides "health care services," but the definition of "health care services" uses the very term it is supposed to help define, and section 538.204(5) never employs the term entity, and instead uses the term institutions.  Nevertheless, on more than one occasion, the Missouri courts have recognized that corporate entities which provide health care services through licensed practitioners fall under the umbrella governed by sections 538.205(4), (5).  *See P.S. v. Psychiatric Coverage, Ltd.*, 887 S.W.2d 622, 627 (Mo. Ct. App. 1994); *Mahoney v. Doerhoff Surgical Services, Inc.*, 807 S.W.2d 503 (Mo. 1991) (en banc); *Beuke v. Pharmacia & Upjohn Co.*, 2000 WL 34430453, *2 (E.D. Mo. 2000)(holding that "a pharmacy is a health care provider, for it renders services to a patient in the ordinary course of a pharmacist's profession.").  In *P.S.* the court concluded that if it did not extend protection of these statutes to corporate entities, it would undermine the intent of the Missouri legislature when it enacted the statute, which was to respond to the growing concern over the increased cost of health care services.  887 S.W.2d 627.  By this logic, extending "health care providers" to include not only pharmacists, but to corporate pharmacies licensed to dispense medication through its employees, seems consistent with that intent.

Further, it would be unfair to hold a corporate pharmacy liable for the actions of its employee, the pharmacist, but not extend to the pharmacy the same statutory rights the pharmacist holds.

Therefore, the Court holds that Walgreen is a "health care provider" whose employees provided "health care services" to Henry when the employee dispensed Mylan

5

1560 to him.

## B. Statute of Limitations and Henry's Motion to Strike

Under Missouri law, actions against "health care providers" for negligence, malpractice, error or mistake related to health care must be brought within two years from the date when plaintiff alleges the act occurred. Mo. Rev. Stat. § 516.105. Henry and Walgreen disagree on the date when the alleged act occurred. Henry pleads that he purchased his prescription on March 23, 2003. Walgreen contends he purchased the prescription on March 19, 2003, and has furnished the Court with a receipt showing disbursement of Mylan 1560 on that date (Ex. A). The receipt does not include Henry's name and the only factor suggesting its relevance is that it includes the name of Henry's doctor and the name of the medication that was dispensed to Henry. Based only on this evidence, the Court cannot find as a matter of law that the statute of limitations has run. "[T]he court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint . . . .'" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (quoting *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999). Because the receipt contradicts the allegations in the complaint, it cannot at this stage be the basis for judgment on the pleadings.

Furthermore, even if the Court found that Walgreen's receipt proved the date when Henry purchased the Mylan 1560, judgment on the pleadings would not be appropriate. Both the Missouri and the federal rules explain how a court should compute time. Both

6

jurisdictions hold that if the last day of a relevant period falls on a Saturday, Sunday or legal holiday, then the period shall be extended until the end of the next day that is not a Saturday, Sunday or legal holiday. Fed. R. Civ. Pro. 6(a); Mo. Rev. Stat. §506.060. Two years from March 19, 2003, would be a Saturday. Therefore, the period is extended until the end of the day on March 21, 2005 -- the day the action was commenced. So even if Walgreen's contention that the transaction occurred on March 19, 2003, is proven true, Henry still commenced the action before the statute of limitations had run. Because the Court has denied Walgreen's Motion to Dismiss, it denies Henry's Motion to Strike as moot.

### C. Strict Liability Claims (Counts II & III)

In Count II of his complaint, Henry seeks recovery under a strict liability theory for Walgreen's alleged failure to warn Henry that Mylan 1560 was dangerous and did not operate as the Dilantin he had been taking. In Count III, Henry seeks to recover under strict liability on the theory that the product was defective. Walgreen contends that these counts should be dismissed because Missouri does not allow for recovery against "health care providers" on a theory of strict liability. *See Budding v. SSM Healthcare System*, 19 S.W.3d 678 (Mo. 2000).

In *Budding* a patient sued the hospital where she had a joint implant that later turned out to be defective, allegedly causing the growth of a tumor in her jaw and requiring several surgeries to repair the damage. *Id.* at 679. The plaintiff relied upon a strict products liability theory of recovery. *Id.* at 680. The Missouri Supreme Court held

7

that Budding's claim was not viable because Missouri did not allow recovery on actions in strict products liability against a "health care provider." *Id.* at 682.

To reach its conclusion, the *Budding* court looked at section 538.225(1), which requires that

> [i]n any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or his attorney shall file an affidavit with the court stating that he has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.[1]

Mo. Rev. Stat. § 538.225(1) (2000). The *Budding* court declared that by using the word "'any action' . . . the legislature clearly demonstrated its intent that the statute [requiring an affidavit] not only apply to a negligence action but to a products liability action as well." 19 S.W.3d at 680. The Court concluded that it would be absurd to require an affidavit showing a breach of duty when a successful strict liability action requires no breach of duty. Therefore, the Missouri Supreme Court held that "it is reasonable to conclude that the legislature intended to eliminate liability of health care providers for strict liability." *Id.* at 681. In reaching that conclusion, the court also relied on the legislature's earlier decision to not extend statutory strict liability to heath care providers.

---

[1]This statute requires the affidavit to be filed within 90 days after the filing of the petition. Until recently, this deadline could be extended by the court on a showing of good cause. On August 28, 2005, Missouri Legislature H.B. 393 (2005), goes into effect, which would prevent a court from extending the deadline beyond 180 days after the petition is filed. The Court takes no position on whether this new statute would apply to this case.

8

Mo. Rev. Stat. § 538.300 (2000).

Because it is clear that *Budding* eliminates claims for strict liability against health care providers, and because Walgreen is a health care provider, Counts II and III of Henry's complaint must be dismissed.

   **D.**   **Breach of Warranty (Counts V & VI)**

Walgreen also argues that the *Budding* rule should be extended to foreclose Henry's claims for breach of implied and express warranties. Walgreen contends that the logic of *Budding* is equally applicable to the breach of warranty claims because neither requires a showing that there has been a breach of the standard for care in the profession. Henry contends that *Budding* does not apply because his warranty claims are not for damages for personal injury or death and, therefore, do not fall under section 538.225, which is applicable to "any action against a health care provider for damages for personal injury or death . . . ." Mo. Rev. Stat. § 538.225 (1). If Henry is pursuing his warranty claim to recover the difference in cost between the generic and branded drug, then he is correct, the claim is not for personal injury or death and the logic of *Budding* is inapplicable. However, if Henry is also seeking warranty damages for the personal losses allegedly caused by the different drug formulations, then he is incorrect. Relying on Henry's statement that he is not seeking warranty damages for personal loss, Walgreen's Motion to Dismiss the warranty claims is denied. The issue will be revisited if Henry attempts to use the warranty claim to pursue damages for personal loss allegedly caused by the difference in the drug formulations.

9

### E. "Innocent Seller Statute"

Under Mo. Rev. Stat. § 537.762, a party in a products liability action whose liability is based solely on its status as a seller in the stream of commerce may move to dismiss itself from a lawsuit if the manufacturer is before the court and total recovery from the manufacturer is possible. The purpose of this statute is to allow a seller to be dismissed without prejudice from the action at an early stage when a more culpable defendant, such as the manufacturer, has been joined. *Drake v. North American Phillips Corp.*, 204 F. Supp. 2d 1204, 1206 (E.D. Mo. 2002). This eliminates the need for the seller to seek indemnification from the manufacturer after the litigation is complete and allows the seller to avoid costly litigation. *Id.* However, the statute does not affect the substantive liability of the seller, because it is only available when the more culpable defendant is both before the court and capable of satisfying the claim. *Malone v. Schapun, Inc.*, 965 S.W.2d 177, 182 (Mo. Ct. App. 1997). As such, it is a procedural, rather than a substantive rule, and it does not apply in federal court. *Id.* (the statute "does not change the substantive law relating to an innocent seller's liability . . . ."). See also *Pruett v. Goldline Laboratories, Inc.*, 751 F. Supp. 1372, 1372 (W.D. Mo. 1990).

Furthermore, Henry has alleged claims against Walgreen far beyond its status as a seller in the stream of commerce. They allege counts for negligence (Count I, IV, VIII), breach of express warranty (Count V), and fraudulent misrepresentation (Count VII). Henry's primary contention is that Walgreen committed a wrongful act in substituting Mylan 1560 for Dilantin. "Under section 537.762, dismissal is only proper where the

defendant's liability is based solely on its status as a seller in the stream of commerce." *Drake*, 204 F. Supp. 2d at 1206. Since it is clear that Henry alleges that Walgreen is liable for more than its acts as a seller in the stream of commerce, dismissal would be improper even if the Court applied the rule.

**F.      Duty of Care Owed by a Pharmacy (Count I, IV VII & VIII)**

Walgreen argues that Missouri does not impose on pharmacies a duty to inspect or test the pharmaceutical products they sell, and that its sole duty is to dispense the prescription according to the physician's instruction.

"Duty is an obligation imposed by law to conform to a standard of conduct toward another to protect others against unreasonable, foreseeable risks." *Horner v. Spalitto*, 1 S.W.3d 519, 522 (Mo. Ct. App. 1999). The *Horner* court rejected the very proposition Walgreen espouses, and instead characterizes the duty of a pharmacist in the familiar language of professional liability. A pharmacist must "exercise the care and prudence that a reasonably careful and prudent pharmacist would exercise in the same or similar circumstances . . . ." *Id.*

Walgreen also argues that because Henry has brought an action against the drug manufacturer alleging that the manufacturer failed to warn, it cannot bring an action against Walgreen wherein it alleges that Walgreen negligently or intentionally failed to warn. Walgreen's logic is that if the manufacturer did not warn, then Walgreen could not have had knowledge to create its own intentional or negligent malfeasance. But the logic of this argument is flawed. First, it presupposes that the drug manufacturer is the sole

11

source of information about a drug. Henry pleads that the negative effect of the drug was available in peer journals available to the industry. Second, a party is free to set forth inconsistent or alternative theories of recovery in their pleadings. Fed. R. Civ. Pro. 8(e)(2). It will be the facts uncovered in this case through the process of discovery that ultimately determines which, if any, claims Henry can proceed with.

Walgreen next contends that the breach of a duty to warn and misrepresentation count should be dismissed, because it requires a showing that the pharmacist had knowledge or reason to know of information regarding the dangerous nature of Mylan 1560. But Henry has pled that Walgreen had knowledge, actual or constructive, and the Court must take that allegation as true for the purposes of this motion.

Furthermore, the very case that Walgreen has cited provides that a supplier who "knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied" is liable for the dangerous affect of the product. *Malone v. Schapun, Inc.*, 965 S.W.2d 177, 184 (Mo. Ct. App. 1997) (the other elements of a failure to warn claim have been omitted, because they are not at issue here). The language used by Malone clearly alleges not only actual knowledge, but constructive knowledge as well. Henry has alleged that information about the defective nature of Mylan 1560 was published in peer journals and that the pharmacist should have known about that information when he substituted Mylan 1560 for Dilantin. As such, a controversy exists sufficient to require discovery on the issue.

Accordingly,

12

It is ORDERED that Walgreen's Motion to Dismiss for Failure to Bring Claims Within the Statute of Limitations (Doc 11) is DENIED.

It is further ORDERED that Henry's Motion to Strike "Exhibit A" from the aforementioned motion is DENIED as moot.

It is further ORDERED that Walgreen's Motion to Dismiss for Failure to State a Claim (Doc. 12) is GRANTED as to Walgreen on Counts II and III, and is DENIED as to all remaining counts.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: August 31, 2005
Jefferson City, Missouri

14